**LARA S. MEHRABAN**
**ASSOCIATE REGIONAL DIRECTOR**
**Valerie A. Szczepanik**
**Dugan Bliss**
**Katherine Bromberg**
**Jon Daniels**
**Attorneys for Plaintiff**
**SECURITIES AND EXCHANGE COMMISSION**
**New York Regional Office**
**200 Vesey Street, Suite 400**
**New York, New York 10281-1022**
**(212) 336-0971 (Bliss)**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>                                        **Plaintiff,**<br><br>                    -against-<br><br>**ROBERT GAUGHRAN and KEVIN CLUNE,**<br><br>                                        **Defendants.** | **17 Civ.    (   )**<br>**ECF Case**<br><br><br>**COMPLAINT**<br><br>**JURY TRIAL**<br>**DEMANDED** |

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against

defendants Robert Gaughran ("Gaughran") and Kevin Clune ("Clune") (collectively

"Defendants"), alleges as follows:

## SUMMARY OF ALLEGATIONS

1.        Gaughran and Clune aided and abetted fraud by Train, Babcock Advisors, LLC

("TBA") and its former principal John H. Rogicki ("Rogicki") resulting from the theft by

Rogicki of more than $9 million from Rogicki's and TBA's charity advisory client ("the

Foundation").  The Foundation, dedicated to improving education and healthcare, had been

established by decedent Z ("Decedent Z") in 1991 and was funded with the assets in her estate

after her passing in 2001.  Rogicki misappropriated the funds from the Foundation between 2004 and 2016 while serving as the Foundation's investment adviser and one of its trustees.

2.	Rogicki befriended Decedent Z when she was an elderly woman, and he served as executor of her estate (the "Z Estate").  Rogicki was President and a trustee of the Foundation.

3.	Gaughran served as the trust and estates attorney to Decedent Z.  He drafted the documents that established the Foundation and appointed Rogicki as the executor of the Z Estate.  Gaughran also served as the estate attorney to the Z Estate, for which he drafted documents reflecting Decedent Z's direction that the assets of the estate go to the Foundation. Gaughran also served as a trustee of the Foundation.

4.	Clune served as the tax accountant on the Z Estate.  Clune also served as the tax accountant for the Foundation since approximately 2003, and for Rogicki personally since approximately 2001.

5.	Rogicki and Gaughran were responsible for having TBA named as the investment adviser to the Foundation.  TBA maintained a client account for the Foundation. During the time that the Foundation was an advisory client of TBA, Rogicki managed the Foundation's account and was an investment adviser to the Foundation.  Rogicki misappropriated more than $9 million from the Foundation and, by so doing, defrauded his and TBA's advisory client.  Rogicki's conduct is imputed to TBA by virtue of Rogicki's position and role with the firm.  Gaughran and Clune aided and abetted Rogicki's and TBA's fraud.

6.	Given their extensive experience with the Z Estate and the Foundation, Gaughran and Clune both knew:  (1) that Decedent Z's will directed that the money in the Z Estate go to the Foundation; (2) how much money was in the Z Estate and how much money was in the Foundation; (3) that each were paid substantial amounts from the Foundation; (4) that

TBA was the investment adviser to the Foundation; and (5) that Rogicki had access to the assets of the Foundation.  Nonetheless, for years, Gaughran and Clune ignored accumulating red flags evidencing Rogicki's misappropriation, thereby allowing Rogicki's and TBA's fraud to occur unabated while they collected large payments from the Foundation.  Moreover, both Gaughran and Clune took affirmative steps that aided Rogicki's and TBA's fraud.  Among other actions, Clune prepared false tax returns omitting the significant withdrawal of funds from the Foundation's account maintained at TBA, and Gaughran signed off on these false tax returns year after year.  Gaughran – with assistance from Clune – provided false withdrawal figures to the Foundation's outside auditor that significantly understated the amount being taken out of the charity.   Through this action, the Commission seeks to hold Gaughran and Clune accountable for their substantial assistance of Rogicki's and TBA's fraud.

## VIOLATIONS

7.      By virtue of the conduct alleged herein, Gaughran and Clune – directly or indirectly, singly or in concert – aided and abetted Rogicki's and TBA's violations of Section 206(1) and Section 206(2) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6(1) and 80b-6(2)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5(a) and (c) thereunder [17 C.F.R. § 240.10b-5(a) and (c)].

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

8.      The Commission brings this action pursuant to authority conferred by Section 209(d) of the Advisers Act [15 U.S.C. § 80b-9(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)], seeking to restrain and permanently enjoin Gaughran and Clune from engaging in the acts, practices, transactions and courses of business alleged herein.

3

9.     The Commission seeks a judgment permanently enjoining Gaughran and Clune from future violations of the Advisers Act provisions and the Exchange Act provisions that they violated as alleged in this Complaint, ordering Gaughran and Clune to disgorge any ill-gotten gains and to pay prejudgment interest thereon, and imposing civil money penalties pursuant to Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].  Finally, the Commission seeks any other relief the Court may deem just and appropriate.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action pursuant to Sections 209(d), 209(e), and 214 of the Advisers Act [15 U.S.C. §§ 80b-9(d), 80b-9(e), and 80b-14] and Sections 21 and 27 of the Exchange Act [15 U.S.C. §§ 78u and 78aa].

11.     Venue is proper in this district pursuant to Section 214 of the Advisers Act [15 U.S.C. § 80b-14] and Section 27 of the Exchange Act [15. U.S.C. §§ 78u and 78aa].  Certain transactions, acts, practices, and courses of business constituting the violations alleged herein occurred within this District.  For example, TBA is located in the borough of Manhattan in New York, New York, where a substantial portion of Gaughran and Clune's transactions, acts, practices, and courses of business constituting the violations alleged herein occurred.

12.     In connection with the conduct alleged in this Complaint, Gaughran and Clune, directly or indirectly, made use of the mails or the means or instrumentalities of interstate commerce, certain of which occurred in this District.

## DEFENDANTS

13.     **Gaughran**, age 70, resides in Holmdel, New Jersey.  Gaughran has been an attorney licensed in New Jersey since 1977, and New York since 1987.  Gaughran served as a lawyer to Decedent Z, the Z Estate, and the Foundation.  Gaughran also has served as Secretary

4

and a trustee of the Foundation since 2001.

14.     **Clune,** age 55, resides in Lido Beach, New York.  Clune is a CPA currently licensed in New Jersey and New York and has been employed as an accountant since 1984. Clune served as the tax accountant for the Z Estate, the Foundation, and for Rogicki personally.

## OTHER RELEVANT PERSONS AND ENTITIES

15.     **TBA** is an investment advisory firm based in New York, New York, managing more than $100 million in assets.  TBA has been in business since January 1959, and became registered with the Commission as an investment adviser on January 27, 1975.  The firm has nine employees and is owned primarily by its current and former senior executives.

16.     **Rogicki**, age 68 resided in Holmdel, NJ and New York, NY at all times relevant to this action, but is currently incarcerated.  Rogicki is TBA's former Managing Director and Chief Compliance Officer ("CCO").  Rogicki joined TBA as senior portfolio manager in 1990 and became a member of the firm in 1995.  Rogicki also served as President and a trustee of the Foundation.  Rogicki was employed by TBA as an investment adviser representative from 1990 until he resigned in January 2017 in connection with conduct alleged herein.  In his position at TBA, Rogicki was an investment adviser to the Foundation.  On October 19, 2017, Rogicki pled guilty to misappropriating more than $9 million from the Foundation in *The People of the State of New York v. John H. Rogicki*, Indictment # 3960-2017, before the Supreme Court of the State of New York, County of New York: Part 42.  On December 14, 2017, Rogicki was sentenced to serve two-and-a-half to seven-and-a-half years in prison and pay $6,728,391.77 to the Foundation, of which he forfeited $2.5 million, in connection with his criminal plea.  On October 19, 2017, the Commission filed a Complaint against Rogicki in this District, *SEC v. Rogicki*, 17-cv-08071-GHW.  The allegations contained in the Complaint in the Commission's related case against Rogicki are incorporated herein by reference.

17.    **Decedent Z**, 1904-2001, was a private philanthropist who left behind a sizeable estate at her death, which she willed to the Foundation (with the exception of several small bequests).  Rogicki served as financial advisor to Decedent Z.

18.    The **Foundation** was established in 1991 by Decedent Z in order to support causes in which she believed, primarily education and healthcare.  It was granted an organization 501(c)(3) status in 1993.  Rogicki was the Foundation's President and a trustee, Gaughran is its Secretary and a trustee, and a third individual is its Treasurer and a trustee. The Foundation was an investment advisory client of TBA and Rogicki from 2001 through 2017.

## FACTS

### Rogicki's and TBA's Fraudulent Scheme

19.    In 1991, Decedent Z, a wealthy elderly woman, established the Foundation, a non-profit charitable organization, to make bequests to her favored causes:  education and healthcare.  Rogicki, who had befriended Decedent Z near the end of her life, served as the President and a trustee of the Foundation.  Gaughran, Decedent Z's lawyer before her death, served as the Secretary and a trustee.  Decedent Z funded the Foundation during her lifetime and left the remainder of her sizable estate to the Foundation.  Decedent Z also named Rogicki executor of her estate.

20.    After Decedent Z died in 2001, Rogicki and Gaughran were responsible for having TBA named to be the organization's investment advisor, with the understanding that Rogicki would be the individual at TBA responsible for overseeing the account.

21.    While in this fiduciary role, Rogicki funneled money to himself that had been intended for the Foundation to distribute to charities.  Rogicki's fraudulent scheme had three steps:  first, Rogicki liquidated positions in the Foundation's TBA advisory account; second,

6

Rogicki wired the cash proceeds from the Foundation's account to a bank account set up for the Z Estate; and, third, Rogicki transferred those funds from the Z Estate into his own personal bank accounts.  Between 2008 and 2016, more than 150 of these improper transfers – in amounts ranging from $15,000 to $385,000 – were made from the Foundation's TBA advisory account to Decedent Z's Estate account.  From approximately 2004 through April 2016, Rogicki misappropriated more than $9 million from the TBA advisory client account of the Foundation in violation of Sections 206(1) and 206(2) of the Advisers Act and Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c) thereunder.  Rogicki's fraud is imputed to TBA.

### Gaughran Aided and Abetted Rogicki's and TBA's Fraudulent Scheme

22.     Gaughran became Decedent Z's Estate counsel when she was 95 and he drafted the documents appointing Rogicki as a trustee of her trust and executor of her estate.  Gaughran also served in a fiduciary role as a director and one of the trustees of the Foundation since 2001. On occasion, Gaughran also performed legal work for the Foundation.  In his positions as counsel for the Z Estate and a trustee of the Foundation, Gaughran knew or was reckless in not knowing that significantly less money was in the Foundation account than should have been there and that Rogicki was misappropriating assets.  Despite knowing about these red flags that either must have or should have alerted him to Rogicki's and TBA's misappropriation, Gaughran made no effort to stop it.  By failing to take any affirmative steps to stop Rogicki's and TBA's misappropriation, Gaughran allowed the fraud to continue.

23.     As trustee, Gaughran was aware of the amount of outlays that were authorized by the Foundation each year for charitable distributions, trustee fees, administrative charges, investment advisory fees, and other expenses.  Gaughran also knew that the Foundation made the vast majority of its charitable donations at the end of each year.  The Foundation's monthly

brokerage statements showed the beginning and ending account balance each month, any investment gains in the account, and the amount of any deposits and withdrawals. Gaughran received the Foundation brokerage statements each month and reviewed them. In addition, Gaughran was given a "Portfolio Appraisal" at each trustee meeting that provided TBA's overview of the Foundation investment account. This document displayed the portfolio value at the time of each meeting as well as any change since the prior meeting; investment gains for the interim period; and net additions/withdrawals in the account. Significantly, the monthly brokerage account statements showed consistent large withdrawals every month throughout the year, and the portfolio appraisals also showed large amounts being withdrawn from the account prior to year-end – in other words, at times when no charitable disbursements or other significant Foundation payments should have been made.

24.    The year-end brokerage account statements and portfolio appraisals also made clear that an excessive amount of money was being withdrawn when contrasted against the annual tax forms filed by the Foundation – all of which were reviewed and signed by Gaughran – listing the total amount of disbursements and expenses. It should have been an immediate red flag to Gaughran that the total amount of withdrawals reflected in the year-end brokerage account statements far exceeded that shown in the tax forms. For example, the first page of the Foundation Form 990-PF tax filing for 2013 clearly identified roughly $800,000 in total expenses and disbursements. However, the summary page of the brokerage account year-end statement for the Foundation identified roughly $1.62 million in net deposits and withdrawals – meaning that roughly $800,000 had been taken out of the account without any explanation or justification. Likewise, a portfolio appraisal was provided to Gaughran at the December 2013 trustee meeting. And this document too showed a similar amount of withdrawals for the year as

the brokerage account statement – again, a figure that was nearly $800,000 higher than the amount of total expenses and disbursements for the year.

25.     The Foundation's monthly and year-end brokerage account statements, as well as the year-end portfolio appraisals, were reviewed by Gaughran for all relevant times.  These documents revealed large discrepancies between the total amount of authorized expenses and disbursements and the total amount of withdrawals from the account.  Moreover, the brokerage account statements showed multiple unexplained large wire disbursements each month out of the Foundation account.  These transfers, in fact, represented Rogicki's movement of funds from the Foundation's accounts to an account in the name of the Z Estate, before Rogicki moved those funds to his personal accounts.

26.     Gaughran also provided a fabricated number to the Foundation's outside auditor that significantly understated the Foundation's outlays when he was specifically asked to obtain and certify the withdrawal figures in connection with a 2014 surprise examination by TBA of the Foundation.  As part of the examination, Gaughran received a letter from TBA's then-CCO in February 2014 requesting certain information relating to the Foundation account for 2013, including the amount of withdrawals.  In response, Gaughran requested the information from Clune, who provided a withdrawal figure that was roughly $800,000 lower than the actual amount taken out of the Foundation account.  The actual amount, which was $800,000 higher than the number Clune provided, reflected the funds that Rogicki had misappropriated from the Foundation account.  Gaughran provided this lower number to TBA despite the fact that both the brokerage account year-end statement and the December 2013 portfolio appraisal clearly showed the actual amount of funds withdrawn during 2013.

27.     Gaughran had incentive to ignore all of these red flags, mislead the auditor, and

allow Rogicki's and TBA's misappropriation to continue:  he received exorbitant compensation each year from the Foundation.  In his capacity as a trustee, Gaughran collected more than $90,000 annually for his limited work on behalf of the Foundation.   In addition, Gaughran was paid in certain years as the Foundation's counsel, at times for doing exactly the same work that he performed as a trustee.

28.     Through all of his actions and inactions described herein, Gaughran associated himself with Rogicki's and TBA's fraud, participated in its continuation, and sought by his actions and inactions to make it succeed.  At minimum, Gaughran knew about numerous red flags that either must have or should have alerted him to Rogicki's and TBA's misappropriation, but Gaughran made no effort to stop it.  As such, Gaughran aided and abetted Rogicki's and TBA's fraud.

### Clune Aided and Abetted Rogicki's and TBA's Fraudulent Scheme

29.     Clune served as the tax accountant for both the Foundation and the Z Estate.   As the accountant for the Z Estate, Clune knew how much money was in the Estate on at least a year-end basis, and how much money should have gone to the Foundation.  Clune also received the brokerage account statements for the Foundation, which made the misappropriation scheme immediately apparent.  In his position as accountant for both entities, Clune knew or was reckless in not knowing about the Rogicki fraud.  Despite knowing about these red flags that either must have or should have alerted him to Rogicki's and TBA's misappropriation, Clune made no effort to stop it.  By failing to take any affirmative steps to stop Rogicki's and TBA's misappropriation, Clune allowed the fraud to continue.

30.     As the Foundation's tax accountant, Clune was provided with financial documents that made clear the inappropriate and excessively large withdrawals from the

Foundation account.  Clune received monthly statements from the Foundation's brokerage

account that identified the beginning and ending balance each month, any investment gains, and

the amount of any deposits and withdrawals.   As part of his preparation of the annual tax

reports, Clune was also required to itemize the total outlays that were authorized by the

Foundation each year, taking into account payments for items such as charitable distributions,

trustee fees, administrative charges, and investment advisory fees.  These documents reviewed

by Clune contained, *inter alia*, the following red flags:

> a.  The monthly brokerage account statements showed consistent large
>     withdrawals every month throughout the year; however, as Clune knew,
>     the Foundation made the vast majority of its charitable donations at the
>     end of each year;
>
> b.  The year-end brokerage account statements showed an excessive amount
>     of money being withdrawn from the account each year; and
>
> c.  The Foundation brokerage account statements showed multiple
>     unexplained large wire disbursements each month – transfers that, in fact,
>     represented Rogicki's movement of funds from the Foundation to the Z
>     Estate.

31.     Clune's failure to address red flags evidencing Rogicki's and TBA's

misappropriation included Clune's substantial involvement with the surprise examination by

TBA of the Foundation for 2013, which was conducted in 2014.  In connection with that

assignment, Clune coordinated the surprise examination for TBA, which involved the review of

brokerage account statements for the Foundation and other materials.

32.     Clune directly contributed to the misleading withdrawal figures that were

provided to TBA and the auditor in connection with the surprise examination.  As discussed

above, Clune provided Gaughran with the number that did not include Rogicki's and TBA's

misappropriations, thus understating the Foundation's actual outlays by roughly $800,000.

33.     Clune had incentive to knowingly or recklessly ignore all of these red flags,

provide false withdrawal numbers, and allow Rogicki's and TBA's misappropriation to continue: Rogicki and the Foundation served as the primary source of income for Clune's solo practice for many years.  Clune also inflated the number of hours worked on his annual invoice to the Foundation to ensure that he continued receiving these exorbitant fees.  Total payments from the Foundation and Decedent Z's Estate alone earned Clune more than $500,000.  And through Rogicki's introduction to TBA, Clune came to serve as the tax accountant to twelve TBA clients.

34.     Through all of his actions and inactions described herein, Clune associated himself with Rogicki's and TBA's fraud, participated in its continuation, and sought by his actions and inactions to make it succeed.  At minimum, Clune knew about numerous red flags that either must have or should have alerted him to Rogicki's and TBA's misappropriation, but Clune made no effort to stop it.  As such, Clune aided and abetted Rogicki's and TBA's fraud.

### FIRST CLAIM FOR RELIEF
**(Aiding and Abetting Violations of Sections 206(1) and 206(2) of the Advisers Act)**

35.     The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 34 of this Complaint.

36.     By engaging in the conduct described above, Gaughran and Clune each knowingly or recklessly provided substantial assistance to Rogicki and TBA, who while acting as an investment adviser, by use of the means of and instrumentalities of interstate commerce or the mails, directly or indirectly:

(a)     employed devices, schemes, or artifices to defraud clients; and

(b)     engaged in transactions, practices, or courses of business which operate as a fraud or deceit upon clients.

37.     By reason of the foregoing, Gaughran and Clune, directly or indirectly, singly or in concert, aided and abetted violations of Sections 206(1) and 206(2) of the Advisers Act [15

U.S.C. §§ 80b-6(1) and 80b-6(2)].

## SECOND CLAIM FOR RELIEF
### (Aiding and Abetting Violations of Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c) Thereunder)

38.     The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 34 of this Complaint.

39.     By engaging in the conduct described above, Gaughran and Clune each knowingly or recklessly provided substantial assistance to Rogicki and TBA, who knowingly or recklessly, in connection with the purchase or sale of securities, directly or indirectly, by the use of means or instruments of transportation or communication in interstate commerce or by the use of the mails, or the facilities of a national securities exchange:

(a)     employed devices, schemes, or artifices to defraud;

(b)     made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

(c)     engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any person.

40.     By reason of the foregoing, Gaughran and Clune, directly or indirectly, singly or in concert, aided and abetted violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(a) and (c) thereunder [17 C.F.R. § 240.10b-5(a) and (c)].

## PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests that the Court grant the following relief, in a Final Judgment:

### I.

Finding that Gaughran and Clune violated the securities laws and rules promulgated thereunder as alleged against them herein;

### II.

Permanently restraining and enjoining Gaughran and Clune, their respective agents, servants, employees and attorneys and all persons in active concert or participation with them, who receive actual notice of the injunction by personal service or otherwise, and each of them, from future violations of Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and 80b-6(2)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

### III.

Ordering Gaughran and Clune to disgorge all of the ill-gotten gains from the violations alleged in this complaint, and ordering them to pay prejudgment interest thereon;

### IV.

Ordering Gaughran and Clune to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. §78u(d)(3)]; and

## V.

Granting such other and further relief as this Court deems just and proper.


Dated: December 22, 2017

New York, New York

By: _____

Lara S. Mehraban
Valerie A. Szczepanik
Dugan Bliss
Katherine Bromberg
Jon Daniels
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-0971 (Bliss)
Email: BlissD@sec.gov